UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEONARD WALKER,

        Plaintiff,

v.

GARY MOHR, et al.,

        Defendants.

Case No. 2:16-cv-769
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff Leonard Walker objects to the Magistrate Judge's recommendation that his Complaint be dismissed for failure to state a claim. For the following reasons, the Court **OVERRULES** Plaintiff's Objection [ECF No. 9], **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation [ECF No. 8], and **DISMISSES** Plaintiff's Complaint with prejudice.

### I.

Plaintiff initiated this action on August 8, 2016, when he requested leave to proceed in forma pauperis. (Appl. & Aff. at 1 [ECF No. 1].) The Court granted Plaintiff's request, (Sept. 2, 2016 Order at 1 [ECF No. 6]), and Plaintiff filed his Complaint. Plaintiff sues under 42 U.S.C. § 1983, alleging various constitutional violations. (Compl. at 6–7 [ECF No. 7].) Plaintiff directs his claims against nine Defendants: Gary Mohr (Director of the Ohio Department of Rehabilitation and Correction (ODRC)); Lee Antonio (Assistant Chief Inspector for the ODRC); Brian Wittrup (Chief of the Bureau of Classification for ODRC); Amy Hamilton (Administrative Assistant to the Warden of the Chillicothe Correctional Institution (CCI)); Paul Arledge (Law Enforcement Investigator for CCI); Jenkins (Warden of CCI); Corby Free (Institutional Inspector at CCI);

Diehl (Institutional Inspector for the Ross Correctional Institution (RCI)); and Lieutenant Evans (RCI employee). (*Id.* at 1–2.)

Three prison incidents form the basis of Plaintiff's case. As the Magistrate Judge explained:

> On November 24, 2014, Plaintiff alleges Arledge issued a false conduct report or ticket for violations of CCI inmate rules that prohibit dealing or participating in a transaction for payment, contraband (identified in the report as tobacco), and the use of telephone or mail in furtherance of criminal activity. ([Compl.] at 2.) On December 2, 2014, Plaintiff alleges, the Rules Infraction Board ("RIB") issued a disposition on the conduct report, in which Plaintiff was given 15 days of solitary confinement. (*Id.* at 3.) On December 12, 2014, the Warden affirmed the RIB decision. Plaintiff filed two informal complaints with the Warden's office alleging Arledge unlawfully searched Plaintiff's cell, confiscated contraband belonging to Plaintiff's cellmate, and cataloged it as belonging to Plaintiff in the conduct report. (*Id.* at 3-4.) The content of the informal complaints subsequently became a formal grievance, which was denied by the Chief Inspector. Plaintiff appealed the RIB decision to the ODRC Director, who affirmed the RIB. (*Id.* at 3.)
>
> As a result of the RIB decision, Plaintiff alleges his brother's visitation rights were permanently revoked because prison officers believe his brother smuggled in the contraband. (*Id.* at 4.) Plaintiff also alleges he was placed in an increased security level, a decision which he appealed unsuccessfully to the ODRC Director. (*Id.* at 3-4.)
>
> The second incident allegedly took place in early 2015, shortly after Plaintiff was transferred to RCI. (*Id.* at 5.) Plaintiff asserts that, in retaliation for his previously filed grievance, he was falsely issued a conduct ticket for having tested positive for marijuana. Plaintiff again filed a grievance to contest the allegedly false ticket, but the RCI Institutional Inspector denied the grievance and Antonio affirmed the denial. (*Id.*)
>
> The third incident allegedly occurred in June 2015 and involved a third-party prison employee issuing a ticket for a "lower level" infraction against Plaintiff for once again testing positive for marijuana. The category of lower level infraction was allegedly chosen specifically so that Plaintiff did not have a right of appeal, as he would in the case of a RIB disposition. Instead, Plaintiff filed yet another grievance, which was again denied by the RCI Institutional Inspector, this time on the procedural grounds that Plaintiff had filed it as a grievance and not an appeal to the RIB—the proper forum. (*Id.* at 5-6.) This third grievance was subsequently also affirmed by the Chief Inspector. (*Id.* at 6.)

(Report & Recommendation at 2–3 [ECF No. 8].)

In her initial screen of the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Magistrate Judge determined that Plaintiff could not state a claim to relief; consequently, she recommended that the Court dismiss Plaintiff's case. (Report & Recommendation at 1.) The Magistrate Judge first considered Plaintiff's claims against Defendants Wittrup, Hamilton, Free, and Evans. As to those Defendants, the Magistrate Judge concluded that the Complaint "provid[ed] insufficient factual content or context from which the Court could reasonably infer that [they] were personally involved in any violation of Plaintiff's rights. It is not sufficient to state that [they], by virtue of their employment positions, had supervisory oversight over actions taken by other prison officers or employees." (*Id.* at 6.)

The Magistrate Judge also recommended dismissing the claims against the remaining Defendants—Mohr, Antonio, Arledge, Jenkins, and Diehl. Plaintiff failed to allege conduct that violates the First or Eighth Amendments, the Magistrate Judge determined. (Report & Recommendation at 6–8.) With respect to the alleged Eighth Amendment violations (Plaintiff's "'long-term isolation/segregation'" and "'security level increase'"), the Magistrate Judge explained that Plaintiff does not have a constitutional right to be free from false accusations, to appeal from a conviction of conduct report charges, or to a particular classification or particular eligibility for rehabilitative programs. (*Id.* at 7 (quoting Compl. at 7).) And as to the purported First Amendment violation—that Defendants retaliated against Plaintiff because he filed complaints in the prison grievance system—the Magistrate Judge found the claim to be purely conclusory and too attenuated. (*Id.* at 8.)

Plaintiff now objects to the Magistrate Judge's Report and Recommendation.

3

II.

A.  **Standard of Review**

If a party objects within the allotted time to a report and recommendation, 28 U.S.C. § 636(b)(1)(C) provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also* Fed. R. Civ. P. 72(b)(3); *United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

Plaintiff objects to the Magistrate Judge's recommendation on her initial screen that this case be dismissed. When screening a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, courts apply the same standard that they use when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ransom v. Owens-Illinois, Inc.*, No. 2:14-cv-1845, 2014 WL 7184412, at *1 (S.D. Ohio Dec. 16, 2014).

Federal Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

4

570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). A complaint will not "suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Plaintiff represents himself in this matter. A pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). A court should make a reasonable attempt to read the pleadings of a pro se litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Even so, pro se plaintiffs must still comply with the procedural rules that govern civil cases. *McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted as to excuse mistakes by those who proceed without counsel.").

**B.     Personal Involvement in the Alleged Constitutional Violations**

Plaintiff first objects to the Magistrate Judge's determination regarding Defendants Wittrup, Free, Hamilton, and Evans. Plaintiff avers that he properly pleaded these Defendants' personal involvement in the alleged constitutional violations. (*See* Obj. at 1–2 [ECF No. 9].) Plaintiff notes that Wittrup is alleged to be "'responsible for overseeing [sic] security level of an inmate, and for transfer or placement.'" (*Id.* at 1.) Free is allegedly "'responsible to ensure that

5

all Rules, Laws, & policies are followed at the institutional level, and reports directly to the warden, ensuring that the inmate grievance process is accomplished.'" (*Id.* at 1–2.) Free, moreover, purportedly "failed to perform his duty, resulting in the unconstitutional conduct." (*Id.* at 2.) And Hamilton is alleged to have "'assist[ed] the warden in the daily overall operations of the facility'" and to have answered an informal complaint submitted to the Warden's Office by Plaintiff. (*Id.*)

Liability under 42 U.S.C. § 1983 "'cannot be imposed under a theory of *respondeat superior*.'" *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "'[P]roof of personal involvement is required for a supervisor to incur personal liability.'" *Id.* (quoting *Miller*, 408 F.3d at 817 n.3). "'At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

None of Plaintiff's allegations allows the Court to plausibly infer that Wittrup, Free, or Hamilton had a personal involvement in the alleged constitutional violations. To begin, the allegation that Wittrup is generally responsible for overseeing activities relevant to Plaintiff's segregation and security level increase is not a plausible allegation that Wittrup authorized, approved, or knowingly acquiesced in the alleged unconstitutional decision to segregate Plaintiff and increase Plaintiff's security level. It is possible that Wittrup was personally involved. But in the absence of additional factual allegations, Wittrup's personal involvement is not plausible.

The analysis is similar for Defendant Free. The allegation that Free is generally responsible for ensuring that CCI staff adhere to applicable rules, laws, and policies, does not allow the Court to plausibly infer that Free authorized, approved, or knowingly acquiesced in the

6

alleged constitutional violations. A supervisor does not necessarily know all of the activities engaged in by his subordinates and colleagues. Without additional factual allegations, the Court cannot plausibly infer that Free was personally involved in the purported unconstitutional conduct.

The Court also cannot plausibly infer that Defendant Hamilton was personally involved in the purported unconstitutional conduct. Hamilton could have assisted the Warden in CCI's daily operations without authorizing, approving, or knowingly acquiescing in the conduct at issue. Plaintiff also contends, in his Objection, that Hamilton answered an informal complaint that Plaintiff submitted to the Warden's Office. (Obj. at 2 [ECF No. 9] (citing ¶ 18 of the Complaint).) Plaintiff, however, did not include this allegation in his Complaint, (*see generally* Compl. [ECF No. 7]), and, consequently, the Court may not consider it, *see Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (stating that a court typically cannot consider "matters outside of the pleadings" when deciding a motion to dismiss). Hamilton's personal involvement in the purported constitutional violations is not plausible when considered solely in light of the allegations contained in the Complaint.

Because the Court cannot plausibly infer that Wittrup, Free, or Hamilton had any personal involvement in the alleged constitutional violations, Plaintiff's claims against those Defendants fail.

As to Defendant Evans, Plaintiff does not, in his Objection, point to any specific allegations that would demonstrate Evans' personal involvement in the alleged constitutional violations. (*See* Obj. at 1–2.) In his Complaint, however, Plaintiff did include a specific reference to Evans' purported behavior. Plaintiff asserted that "a Lt. Evans . . . alleg[ed] he was in possession of confiscated 'tobacco', [and] falsely twisted the story and alleged that purported

7

testing showed the substance to actually be marijuana." (Compl. ¶ 27.) Plaintiff plausibly alleges Evans' personal involvement in the purported unconstitutional conduct. This determination, however, does not alter the Court's conclusion that Plaintiff has failed to state a claim against Evans. As explained below, Plaintiff has not alleged plausible constitutional violations.

### C.  The Alleged Constitutional Violations

Plaintiff contends that he alleged plausible constitutional violations. (*See* Obj. at 2–4 [ECF No. 9].) He insists that Defendants violated liberty interests created by two Ohio regulations. (*Id.*) And he argues that he properly pleaded a First Amendment retaliation claim. (*Id.* at 3–4.)

#### 1.  Liberty Interests

Plaintiff asserts that Ohio Administrative Code ("O.A.C.") §§ 5120-9-06(D) and 5120-9-04(B) each create liberty interests under the Fourteenth Amendment's Due Process Clause. By violating those regulations, Defendants have purportedly violated Plaintiff's constitutional due process rights.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). "Prisoners have narrower liberty interests than other citizens[,] as 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin v. Connor*, 515 U.S. 472, 485 (1995)). "Prisoners, however, retain a 'residuum of constitutionally protected liberty,'" that emanates from two discrete sources: state law and the Due Process Clause itself. *Bazzetta*, 430 F.3d at 801 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 466 (1989) (Marshall, J., dissenting)). To create a liberty interest, a

8

state regulation must establish freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (explaining that "the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause" and adopting a test for the creation of liberty interests based on the nature of the prisoner's deprivation); *Bazzetta*, 430 F.3d at 802–03 (acknowledging that, after *Sandin*, the relevant inquiry in identifying liberty interests is "the nature of the deprivation imposed on a prisoner," not the language of the relevant prison regulation).

Ohio Administrative Code § 5120-9-06(D) states that "[n]o inmate shall be found guilty of a violation of a rule of conduct without some evidence of the commission of an act and the intent to commit the act." Plaintiff, in turn, contends that no evidence supports the Defendants' determination that he violated prison rules. (*See* Compl. at 6–7 [ECF No. 7].) This claimed lack of evidence purportedly violates Plaintiff's constitutional due process rights because, Plaintiff argues, O.A.C. § 5120-9-06(D) creates a liberty interest. (*See* Obj. at 2–3 [ECF No. 9].)

Although O.A.C. § 5120-9-06(D) mandates that "some evidence" must support a determination that a prisoner has violated a prison conduct rule, a state regulation does not create a liberty interest simply because it contains mandatory language directed at prison administrators. *See Sandin*, 515 U.S. at 483–84. The existence of a liberty interest hinges, as stated above, on the nature of the deprivation to which a prisoner is subjected. Here, Plaintiff was not subjected to atypical or significant hardship in relation to the ordinary incidents of prison life as a consequence of his being found guilty, in the purported absence of some supporting evidence, of a rule violation. Plaintiff was confined in isolation for 15 days; Plaintiff's security level was increased; and Plaintiff's brother was permanently removed from the prison's visitor

9

list. (Compl. at 3–4.) The Supreme Court and the Sixth Circuit have determined that no liberty interest exists with respect to deprivations much more serious than the ones involved in this case. *See Sandin*, 515 U.S. at 487 (holding that a prisoner's 30-day confinement in disciplinary segregation is "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life"); *Bazzetta*, 430 F.3d at 802 (stating that a substance abuse regulation that banned most visitation for prisoners found guilty of two or more substance abuse violations "is neither a 'dramatic departure,' nor an 'atypical and significant hardship' in relation to the ordinary incidents of prison life"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (holding that a prisoner's designation as a member of a security threat group did not give rise to a liberty interest). Ohio Administrative Code § 5120-9-06(D) did not establish freedom from a restraint that would have imposed atypical or significant hardship on Plaintiff. Consequently, § 5120-9-06(D) does not create a liberty interest capable of being violated by Defendants.

The Court turns now to O.A.C. § 5120-9-04(B), which states:

> As used herein, the term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment. A single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule.

O.A.C. § 5120-9-04(B). Plaintiff suggests that Defendants violated this regulation by issuing inmate conduct reports as a means of harassing him. (Obj. at 4 [ECF No. 9].) From Plaintiff's perspective, this alleged regulatory violation amounts to a constitutional due process violation because O.A.C. § 5120-9-04(B) creates a liberty interest. (*Id.*)

Plaintiff's liberty interest argument under O.A.C. § 5120-9-04(B), like his argument under § 5120-9-06(D), hinges on the nature of the deprivation to which he was subjected. Plaintiff, as noted above, was confined in isolation for 15 days, suffered an increase to his

10

security level, and had his visitation privileges with his brother revoked. (Compl. at 3–4 [ECF No. 7].) Plaintiff was not subjected to atypical or significant hardship in relation to the ordinary incidents of prison life as a consequence of Defendants' purported inappropriate supervision. *See Sandin*, 515 U.S. at 487; *Bazzetta*, 430 F.3d at 802; *Harbin-Bey*, 420 F.3d at 577. And § 5120-9-04(B), like § 5120-9-06(D), does not create a liberty interest capable of being violated by Defendants. *See Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) ("The state simply has no 'federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.'" (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993))).

### 2. First Amendment Retaliation

Lastly, Plaintiff avers that he has pleaded a plausible First Amendment retaliation claim. (Obj. at 3–4 [ECF No. 9].) The Magistrate Judge had found the allegations supporting that claim to be purely conclusory and too attenuated. (Report & Recommendation at 8 [ECF No. 8].)

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff has adequately pleaded the first element of a retaliation claim: an inmate has a First Amendment right to file grievances against prison officials. *Thomas*, 481 F.3d at 440. Plaintiff has also pleaded sufficient facts to satisfy the second element. Defendants purportedly retaliated against Plaintiff by permanently removing his brother from the prison's visitor list and

11

by falsely issuing Plaintiff two conduct tickets for marijuana use. (Compl. at 4–5 [ECF No. 7].) A prisoner of ordinary firmness would be deterred from filing grievances when doing so may lead to the retaliatory issuance of misconduct tickets or the retaliatory removal of relatives from the prison's visitor list. *See Thomas*, 481 F.3d at 441.

The question, then, is whether Plaintiff has adequately pleaded the third element—causation. He has not. "Because the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." *Thomas*, 481 F.3d at 441. Plaintiff points to no statements, documents, or other factual allegations from which the Court could plausibly infer that Defendants retaliated against Plaintiff as a result of him filing grievances. (*See generally* Compl.) Plaintiff, instead, offers conclusory allegations. Plaintiff states "that the events at RCI have occur[r]ed solely in ("retaliation") for attempting to obtain redress regarding the herein CCI issues." (*Id.* at 5.) And Plaintiff contends that "[t]he 'pattern' of continuing violations [described in the Complaint] violates the 1st Amendment, as 'First Amendment Retaliation[].'" (*Id.* at 7.) These types of naked assertions, devoid of further factual enhancement, are insufficient to state a plausible claim to relief.

Plaintiff insists that the Court "must accept all permis[s]ible 'inferences' as true," and that "an 'inference' easily supports the allegations that the purpose of the conduct reports were in retaliation for exer[c]ising constitutional rights." (Obj. at 3 [ECF No. 9].) Plaintiff, however, misapprehends the applicable standard. When considering a motion to dismiss, a court must accept all of the complaint's *well-pleaded factual allegations* as true. *Grindstaff*, 133 F.3d at 421 (emphasis added). And here, Plaintiff's Complaint contains no well-pleaded factual allegations relevant to the causation element of his retaliation claim. (*See generally* Compl.) Plaintiff has failed to state a plausible First Amendment retaliation claim.

12

## III.

For the reasons stated above, the Court **OVERRULES** Plaintiff's Objection [ECF No. 9], **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation [ECF No. 8], and **DISMISSES** Plaintiff's Complaint with prejudice.

**IT IS SO ORDERED.**

1-30-2017
DATE

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**